UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA**

v.                                                        Case No.: 8:15-CR-98-T-33TBM

**LEANDRO ADRIAM ESTRADA-DAVILA**
_____/

**SENTENCING MEMORANDUM**

**COMES NOW**, the Defendant, Leandro Adriam Estrada-Davila, by and through undersigned counsel, and files this sentencing memorandum in support of a reasonable sentence. As grounds in support thereof, Mr. Estrada-Davila shows as follows:

Mr. Estrada-Davila is a 32-year-old from the most impoverished part of Columbia. Buenaventura is violent and ruled by drug cartels often leaving individuals who live there with few alternatives. Mr. Estrada-Davila was raised in extreme poverty. His unskilled mother was unable to support the family and his father was not present in their lives. The family often went without food or proper clothing. (PSR ¶41). Any possibility of continuing school was out of the question. From the age of 11, Mr. Estrada-Davila without any vocational training or skills, was forced into labor and worked odd jobs such as house painting, or working in unsafe conditions in very dangerous mine. (PSR ¶42 ).

He began working in a mine at the age of 12 to help support his mother and his siblings.

Mr. Estrada-Davila has been in a common law union with Maria Moreno for a short period of time, less than two years. They are expecting their first child in September. It is sad to contemplate that Mr. Estrada-Davila felt unable to support his nascent family of four. Lacking funds to move from Buenaventura, he found himself living in a mesh of corruption and greed, with human life or suffering meaning little.

In Buenaventura, everyone is a commodity or product. Drug gangs, who commit murder with impunity, now essentially rule Buenaventura. A recent study by Human Rights Watch, explains how the city has changed since Mr. Estrada-Davila came of age. *See* **attached article DX "1"**. Successor groups to the paramilitaries control most neighborhoods. It is not a wise decision to refuse their requests or to antagonize them. Columbia has the second largest population of internally displaced people in the new world. Buenaventura appears to be the epicenter.

Already aware of the reach of the paramilitary groups, Mr. Estrada-Davila knew he was residing in an area of no law. Inured to the criminal chaos of Columbia, rather than flee Buenaventura, he unwisely chose to make this boat trip. If things do not change in Colombia and to avoid any future threats,

Mr. Estrada-Davila plans on relocating out of Columbia when he is finally released in this matter. This is conditioned on his hope that he can earn some money while incarcerated.

## **MINOR ROLE**

Mr. Estrada-Davila's role in this case was simply as a mariner on the vessel. He was not the Capitan, the lode guard, or navigator. His role was the most basic on the smallish boat. He believes that he qualifies for a minor role reduction.

The guideline for minor role is U.S.S.G. §3B1.3, it has a new amendment that is a more inclusive guideline provision for individuals like Mr. Estrada-Davila, the new commentary note "c" reads:

> 3. Applicability of Adjustment.—
>
> (A) Substantially Less Culpable than Average Participant.—This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity.
>
> A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the ~~concerted~~ criminal activity ~~is not precluded from consideration for~~ may receive an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, whose ~~role~~ participation in that offense was limited to

3

> transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored ~~is not precluded from consideration for~~ may receive an adjustment under this guideline.
>
> Likewise, a defendant who is accountable under §1B1.3 for a loss amount under §2B1.1 (Theft, Property Destruction, and Fraud) that greatly exceeds the defendant's personal gain from a fraud offense ~~and~~ or who had limited knowledge of the scope of the scheme ~~is not precluded from consideration for~~ may receive an adjustment under this guideline. For example, a defendant in a health care fraud scheme, whose ~~role~~ participation in the scheme was limited to serving as a nominee owner and who received little personal gain relative to the loss amount, ~~is not precluded from consideration for~~ may receive an adjustment under this guideline.

The purpose of the mitigating role adjustment is to ensure that a low-level participant in a conspiracy does not receive the same sentence as a high-level participant. Otherwise, based on the fact that all of the defendants in a conspiracy are held accountable for the total quantity of drugs involved, non-similarly situated defendants would be receiving the same sentence despite the minor role that some of the defendants may have had. Since, Mr. Estrada-Davila is being held for an amount of cocaine that places him at the same offense level as the owners, and those charged with logistics, his role must be compared to all of the other participants of the group of individuals.

The amendment to the guidelines provides an edited non-exclusive list of factors to be considered:

> (C) <u>Fact-Based Determination</u>.—The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.
>
> In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:
>
> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.
>
> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.
>
> The fact that a defendant performs an essential or

>indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

In the present case, the factors weigh in favor of Mr. Estrada-Davila's minor role status. Factually, Mr. Estrada-Davila was paid by others in the conspiracy. Mr. Estrada-Davila had no equity interest in the drugs. He had no role in planning the criminal scheme and absolutely no role in the ultimate distribution of the cocaine. Other factors supporting Mr. Estrada-Davila's minor role status include, the fact that he did not recruit any other participants, he had little knowledge of the scope of the broader conspiracy, and he reported to a larger player in the conspiracy. Distinctly, no one reported to him. Clearly under these facts, Mr. Estrada-Davila was less culpable than most of the participants. Specifically, he was less culpable than the loaders, the logistics people, the distributors, the purchaser of the cocaine, the seller of the cocaine, or any other unindicted co-conspirators. He was essentially a mule on a boat.

Based on the forgoing argument and legal authority, Mr. Estrada-Davila's objections should be granted and he should receive a two-level reduction for minor role. Such a result will be consistent with one of the main goals of the guidelines by insuring that (absent the mandatory ten year sentence) he does not receive the same sentence as individuals that are more culpable

than him, thus running astray of the guiding goal that similarly-situated defendants should be punished similarly.

The seminal Eleventh Circuit case dealing with the determination of a mitigating role reduction pursuant to U.S.S.G. §3B1.3 is *United States v. Rodriguez De Varon*, 175 F.3d 930 (11th Cir. 1999). In the *De Varon* case, the Eleventh Circuit established a two-part test for determining whether a defendant qualifies for a minor role reduction. *De Varon*, 175 F.3d at 934. As the Eleventh Circuit noted, first, and foremost, the district court must measure the defendants role against her relevant conduct, that is, the conduct for which she has been held accountable under U.S.S.G. §1B1.3. *Id*., at 940-941. The Eleventh Circuit further stated the second part of the test requires that where the record evidence is sufficient, the district court may also measure the defendants conduct against that of other participants in the criminal scheme attributed to the defendant. *Id*.

## **RESPONSE TO U.S.S.G. §5K1.1 MOTION**

Mr. Estrada-Davila has cooperated with authorities. The individuals he cooperated against are dangerous people. He is an outsider in their ranks. He cannot expect any protection in relation to the traffickers. His cooperation with authorities has been forthright and meaningful.

While Mr. Estrada-Davila is obviously happy that the government is filing a U.S.S.G. §5K1.1 motion, he does not believe that the recommended levels appropriately reflect his actual cooperation, as well as his actual involvement in this case. For that reason, Mr. Estrada-Davila respectfully requests this Court grant a larger departure under Section 3553(e). In *United States v. Thomas*, 930 F.2d 526, 528 (7th Cir. 1991), the court stated that the extent of substantial assistance to departures must be linked to the structure of the guidelines, and the governments recommended sentence, should be the starting point. As this Court is aware, once the 5K1.1 motion is made, the decision of what extent to depart lies in the district courts discretion, not the governments. *United States v. Foster*, 988 F.2d 206, 208 (DC Cir. 1993). Certainly, once setting a downward departure motion in process, the government cannot dictate the extent to which the Court will depart. *United States v. Udo*, 963 F.2d 1318, 1319 (9th Cir. 1992). *Udo* was remanded as the district court erred in concluding that it had no authority to depart below government recommendations. The Eleventh Circuit, in *United States v. Pippin*, 903 F.2d 1478, 1485 (11th Cir. 1990), similarly ruled and found that the government cannot limit the extent the court can depart upon the filing of a 5K1.1 motion.

U.S.S.G. §5K1.1 provides this Court with factors to consider in reaching a reduction. *See* U.S.S.G. §5K1.1. Substantial Assistance to Authorities (Policy Statement):

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
>
> (a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
>
> (1) The court's evaluation of the significance and usefulness of the defendants assistance, taking into consideration the governments evaluation of the assistance rendered;
>
> (2) The truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3) The nature and extent of the defendants assistance;
>
> (4) Any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>
> (5) The timeliness of the defendants assistance.

U.S.S.G. §5K1.1.

On each of the five areas, Mr. Estrada-Davila scores favorably. Clearly, the significance of and usefulness of his assistance is directly related to the

investigation of transportation of cocaine. It is therefore significant to the governments prosecution of other individuals. Mr. Estrada Davila's statements, which were given immediately after his guilty plea were complete, and truthful. He placed himself at the discretion of the United States of America. Mr. Estrada-Davila, by cooperating, placed himself in a position of potential danger and risk of injury to himself or to his family. He must always be concerned with any potential payback, not necessarily from the other individual in this case, but other persons who may have been affected by his cooperation. Finally, Mr. Estrada-Davila's assistance was immediate.

The United States Attorney's Office has very strict guidelines when recommending how many levels to depart. However, this Court is free to sentence Mr. Estrada-Davila as it sees appropriate. He believes he is entitled to an appropriate and proper reduction of his sentence beyond that recommended by the United States of America. Mr. Estrada-Davila cooperated in every way in which he was able and did so immediately.

For the above reasons, Mr. Estrada-Davila seeks additional levels of reduction from his sentence based on his truthfulness, completeness and reliability of his information for his involvement and cooperation.

## *UNITED STATES V. BOOKER* AND 18 U.S.C. §3553(a)

Mr. Estrada-Davila has pled guilty to a crime with a ten (10) year minimum mandatory. It is expected that he will receive a U.S.S.G. §5K1 motion from the government. His guidelines without the granting of the minor role objection or the U.S.S.G. §5K1 motion is 135 months. Mr. Estrada-Davila believes that, a total sentence of 84 months would more than adequately punish Mr. Estrada-Davila. The decision of the United States Supreme Court in *United States v. Booker,* has rendered the United States Sentencing Guidelines effectively advisory." *Booker*, 125 S. Ct. 738, 756 (2005). Pursuant to *Booker*, sentencing courts are required to consider a defendant's Guideline range, but may "tailor the sentence in light of other statutory concerns as well at *Id.,* (*citing* 18 U.S.C. §3553 (a)).

## THE APPLICATION OF 18 U.S.C. §3553 (A) TO MR. ESTRADA-DAVILA'S CASE

**A. The nature and circumstances of the offense and the history and characteristics of the defendant.**

Mr. Estrada-Davila admittedly committed a federal crime. However, the nature and circumstances of his offense and his personal history and characteristics, weigh in favor of a sentence that does not require 108 months imprisonment. While the behavior was reprehensible and legally wrong, it was not of a violent nature. Nor, was his involvement remotely sophisticated.

### B. The Purposes of Sentencing

Section 3553(a)(2), lists four purposes of sentencing, which can be summarized as:

> (1) just punishment;
> (2) deterrence;
> (3) protection of the public; and
> (4) rehabilitation.

Under the parsimony principal, the sentence in this case should be the minimum necessary to accomplish the listed purposes. *See* §3553(a); *Lacy*, 99 F. Supp. 2d at 119. Each of the purposes listed by §3553(a)(2) would be achieved by a seven (7) year sentence.

### C. Just Punishment and Deterrence

With regard to a just punishment, Mr. Estrada-Davila's actions were no doubt morally wrong, legally forbidden and misguided. Compared to most boat cases, it was also of a lesser magnitude both in the kind of vessel employed and in the amount of contraband on board. A sentence of 84 months would also be a deterrence to keep him from returning to such activities, no matter how desperate he became. This sentence is more than adequate to deter Mr. Estrada-Davila from engaging in similar conduct in the future. In the context of general and specific deterrence, this sanction would sternly caution Mr. Estrada-Davila and the world against such foolhardy actions. It is

not one that would make either Mr. Estrada-Davila or the general public look lightly upon the behavior in which he was involved.

### D. Protection of the Public

An additional term of imprisonment is unnecessary in this case to ensure the safety of the community. There is no other indication in Mr. Estrada-Davila's life history to suggest that he poses any danger to the public. Indeed, this involvement appears to be aberrant.

### E. Rehabilitation

Mr. Estrada-Davila is able to reflect on what he has done, move forward, and learn from it. Indeed, he has already done so. Mr. Estrada-Davila immediately admitted his guilt and debriefed with the agents. While there may be rehabilitative programs available in prison, Mr. Estrada-Davila will not qualify to participate in such programs since he is undocumented, hence, any sentence will lack a rehabilitative factor of job training or even education. There is an only limited rehabilitative factor involved in prison work (sweeping and polishing floors) that cannot be accomplished in his own country.

### F. The Kinds of Sentences Available (and Related Costs)

Notably, housing Mr. Estrada-Davila in a federal prison will be significantly more expensive to taxpayers and the federal government than

allowing him to be sentenced to a lesser sentence. According to the presence report, it would cost approximately $30,621.69, per year to house a mentally healthy Mr. Estrada-Davila at a federal prison. Therefore, if seven (7) years is as effective as 108 months in prison as a deterrent, then the extra great expense is unnecessary. While this court cannot alter the minimum mandatory, Mr. Estrada-Davila requests the lowest allowable sentence.

### G.    Other Relevant Concerns

Mr. Estrada-Davila has the ability to continue to work at gainful employment and is embracing employment. His desire to support his family is great and will keep him from straying outside of the small world he understands in the future. He recognizes that he is not equipped to function in the broader world. For that reason, allowing Mr. Estrada-Davila to complete his sentence as soon as possible and return to his world to continue to work would have the best rehabilitative factor available to this Court.

### **CONCLUSION**

For the reasons stated herein, Mr. Estrada-Davila, respectfully urges this Court to impose a lenient sentence. Such a sentence will be reasonable and will adequately take into account the advisory guideline range and the factors set forth at 18 U.S.C. §3553(a). Such a sentence will be a fair and just punishment.

DATED this 31st day of August, 2015.

Respectfully Submitted,

DONNA LEE ELM
FEDERAL DEFENDER

*/s/ Frank W. Zaremba*
Frank W. Zaremba
Florida Bar No. 0277371
Assistant Federal Defender
400 N. Tampa Street, Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Fax: (813) 228-2562
Email: Frank_Zaremba@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of August 2015, a true and correct copy of the foregoing was furnished by using the CM/ECF system with the Clerk of the Court, which will send notice of the electronic filing to the following:

James Zoll, AUSA

*/s/ Frank W. Zaremba*
Frank W. Zaremba
Assistant Federal Defender